# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KEENAN L. MCCOY,                )
                                )
        Plaintiff,          )
                                )
                                )
vs.                             )      Case No.  12-1211-JAR-JPO
                                )
CITY OF INDEPENDENCE,           )
KANSAS, CLARENCE SNYDER, and    )
KENNETH PARKER,                 )
                                )
                                )
        Defendants.         )
_____)

## MEMORANDUM AND ORDER

Plaintiff Keenan L. McCoy alleges racial profiling by City of Independence, Kansas, Police Officer Clarence Snyder and former Chief of Police Kenneth Parker in March and April of 2011. Before the Court is Parker's Motion for Judgment on the Pleadings (Doc. 19), in which Parker argues that the Complaint fails to allege plausible facts giving rise to a claim against him under 42 U.S.C. § 1983. The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the motion is granted.

**I.**    **Standard for Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).[1] In deciding a Rule 12(b)(6) motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff.[2]

---

[1] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

[2] *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim.[3] In so doing, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[5] but it requires more than "a sheer possibility."[6] Thus, "a formulaic recitation of the elements of a cause of action," standing alone, is insufficient to survive a motion to dismiss.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[3]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

[4]*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5]*Id.* at 545.

[6]*Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]*Twombly*, 550 U.S. at 555.

[8]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[9]*Id.* at 679.

2

entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## II.     Allegations in the Complaint

The following facts are alleged in the Complaint (Doc. 1) and taken in the light most favorable to McCoy.

In the early evening hours of March 23, 2011, McCoy and his 15 year-old stepson, "I.K.," were driving on Laurel Street in Independence to rent a video from the Redbox dispenser. As they drove, McCoy observed a police car make an abrupt u-turn in his rear view mirror and pull in behind him. The police car was operated by Officer Snyder.

McCoy pulled over after seeing the police car's red lights.  Over the vehicle's loudspeaker, Officer Snyder ordered McCoy and I.K. to place their hands out their windows. Other police vehicles soon pulled up to assist.  McCoy and I.K. listened and watched in shock as the officers exited their vehicles with handguns drawn and a shotgun pointed at them.  The officers ordered them to get out of the vehicle one at a time and walk backwards toward them with their hands behind their backs.  One of the officers, Christina Johnson, approached McCoy and quickly indicated that "this is not him."  She said the same as to I.K.  McCoy and I.K. were then told they were free to leave without explanation or apology.

Defendants were looking for a black individual, Anthony Sterling, who had allegedly threatened certain individuals that morning.  In spite of this claim, records indicate that prior to

---

[10]*Id.*

[11]*Id.* at 678.

3

the McCoy stop, Defendants had not sought an arrest warrant for Sterling. Additionally, no "all-points-bulletin" had been issued for Sterling's arrest. Defendants now claim that they stopped McCoy because I.K. resembled Sterling. Sterling is a slight man, 5'6" with gold teeth and dredlocks. I.K was a 15 year old boy, over 6 feet tall and 270 pounds. There was absolutely no resemblance between the two. And McCoy's vehicle did not match the description of Sterling's vehicle.

McCoy contacted then-Chief of Police Kenneth Parker the next day to complain about the stop. Parker acknowledged that they were looking for Sterling and that the stop had been in error. Parker told McCoy that Snyder had a bad attitude and that previously Parker had decided not to allow Snyder to serve warrants due to safety concerns.

Almost a month after the stop in question, on or about April 19th at approximately 11:30 p.m., McCoy went to his wife's place of employment, Braums, to pick her up from work. While McCoy was peacefully waiting for his wife to lock up, he was approached by another officer. Mrs. McCoy observed this and exited the building. She advised the officer that she was the senior manager that evening, that McCoy was her husband, and that no one from Braums had called to ask for assistance. In spite of the reassurances, the officer demanded McCoy's I.D. and ran his name through a warrant database. The officer then left. A few days later, Parker came to Braums and asked to speak to "that black lady." Mrs. McCoy agreed to speak with him. Parker told her that he had asked the officers to watch the area, and warned her that "we do not need a racial profiling case."

There are no black officers employed by the Independence Police Department and many of the black citizens of Independence are afraid to speak up, fearing retaliation.

**III.     Discussion**

McCoy concedes in a footnote that he has no claim against Parker under 42 U.S.C. § 1981. His only claim is brought under § 1983, and therefore the Court confines its analysis to this claim.[12] To state a claim under § 1983, McCoy "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[13] McCoy's racial profiling claim arises under the Equal Protection Clause of the Fourteenth Amendment, based on "selective enforcement of a law on the basis of race."[14] McCoy must allege that "he is a member of a protected class, that a motivating factor in the officers' actions toward him was the plaintiff's protected class, and that the officers treated him differently than similarly-situated individuals in an unprotected class."[15]

"In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."[16] When a claim is asserted against multiple defendants, the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims

---

[12]McCoy alleges that the Court has jurisdiction over "the supplemental state law claims," but fails to identify a state law claim elsewhere in the Complaint. McCoy does not address state law in his response to the motion for judgment on the pleadings either. Therefore, the Court finds that McCoy does not allege a state law claim, despite his invocation of the Court's supplemental jurisdiction.

[13]*West v. Akins*, 487 U.S. 42, 48 (1988).

[14]*Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003).

[15]*Love v. Kan. City, Kan. Police Dep't*, No. 11-2139, 2011 WL 1484156, at *2 (D. Kan. Apr. 19, 2011) (citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006); *Mendia v. City of Wellington, Kan.*, No. 10-1132-MLB, 2010 WL 4513408, at *3 (D. Kan. Nov. 2, 2010)).

[16]*Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

against him or her."[17]  The Tenth Circuit has held that, "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."[18]

Furthermore, liability cannot be imposed vicariously via the doctrine of *respondeat superior*.[19]  When asserting a claim against a supervisor, a plaintiff must demonstrate "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[20]

Parker's motion for judgment on the pleadings first argues that he did not personally participate in either incident described in the Complaint.  McCoy explains that the basis for personal liability against Parker is that he allowed Snyder to remain "on the street" despite his safety concerns.  McCoy also points to Parker's visit to Mrs. McCoy, arguing that he threatened her by warning her not to file a "racial profiling case."  The facts as alleged do not support personal participation by Parker in either incident.  According to the Complaint, Parker knew that Officer Snyder had a bad attitude and he had safety concerns about Snyder serving warrants.  However, there are no facts alleged that suggest Parker knew that Snyder was prone to racial profiling and did nothing to stop it.  And there are no factual allegations that Parker personally

---

[17]*Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

[18]*Robbins*, 519 F.3d at 1250.

[19]*Trujillo*, 465 F.3d at 1228.

[20]*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

participated in the April 19th racial profiling incident—McCoy does not allege that Parker was present during the encounter at Braums. While the Complaint does allege that Parker told Mrs. McCoy that he had told officers to "watch the area," the Court cannot reasonably infer from this factual allegation that he directed officers to racially profile McCoy. And the Court cannot reasonably infer liability based on the alleged threat to Mrs. McCoy the next day because McCoy cannot support his claim based on the alleged violation of the rights of someone else.[21]

Parker's motion also argues that McCoy fails to allege sufficient facts to support a plausible claim for supervisory liability. McCoy argues that Parker admittedly had knowledge of Snyder's bad attitude, yet allowed him to patrol the streets with a weapon, causing the deprivation of McCoy's rights. But knowledge of a subordinate's bad attitude does not show that Parker condoned racial profiling. There is no allegation that a similar incident had previously occurred or that Parker had any reason to suspect that Snyder or any other officer participated in racial profiling. Moreover, Parker's directive that officers "patrol the area" where Braums is located does not allow a reasonable inference that Parker directed the officers to racially profile on April 19th. Even if Parker had some knowledge of his subordinates' discriminatory purpose in stopping McCoy's vehicle or asking him for his I.D., it would not be sufficient to establish vicarious liability.[22]

In responding to the motion for judgment on the pleadings, McCoy suggests in his recitation of the legal standard that the appropriate remedy is allowing him to amend the complaint, rather than dismissal. But there is no motion to amend before the Court, proposing

---

[21]*See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).

[22]*See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

7

additional factual allegations that might save McCoy's claims against Parker. Accordingly, the Court grants Parker's motion for judgment on the pleadings and dismisses him from this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Parker's Motion for Judgment on the Pleadings (Doc. 19) is **granted**. Defendant Parker is hereby dismissed from this case.

**IT IS SO ORDERED**.

Dated: November 29, 2012

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE